

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50121 | **DATE** | 11/27/2001 |
| **CASE TITLE** | WITT vs. GOODYEAR/KELLY-SPRINGFIELD | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated in the attached Memorandum Opinion and Order, Goodyear/Kelly's motion for summary judgment is granted. This cause is hereby dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | number of notices | |
| X | Notices mailed by judge's staff. | NOV 27 2001 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| /SEC | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION



CYNTHIA WITT,

    Plaintiff,

v.

GOODYEAR/KELLY-SPRINGFIELD
TIRE COMPANY, INC.,

    Defendant.

00 C 50121

Judge Philip G. Reinhard

**MEMORANDUM OPINION AND ORDER**

I. *Introduction*

Plaintiff Cynthia Witt ("Witt"), a former employee of defendant Goodyear/Kelly Springfield Tire Company, Inc. ("Goodyear/Kelly"), has sued Goodyear/Kelly under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq. Her amended complaint claims disparate treatment in training on the basis of gender (Count I), sexual harassment (Count II), and retaliation (Count III). Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). Venue is proper under 28 U.S.C. § 1391(b), since Goodyear/Kelly resides in this district, and the events giving rise to Witt's claims occurred in this district. Pending before this court is Goodyear/Kelly's motion for summary judgment, filed pursuant to Fed. R. Civ. P. 56.

II. *Motion to Strike Portions of Witt's Statement of Additional Facts*

At the outset, the court must evaluate Goodyear/Kelly's request in its Response to Plaintiff's Additional Facts that the court strike Witt's Additional Facts on the grounds that they

are based on an improper affidavit. "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Absent supporting evidence, "[c]onclusory allegations by the party opposing [a summary judgment] motion cannot defeat the motion." Aberman v. J. Abouchar & Sons, Inc., 160 F.3d 1148, 1150 (7th Cir. 1998) (quoting Smith v. Shawnee Library Sys., 60 F.3d 317, 320 (7th Cir. 1995)).

Paragraph Eleven of Witt's Additional Facts, based on Paragraph Eleven of her affidavit, contains inadmissible speculation about what management knew. This information is not within Witt's personal knowledge, and lacks a foundation. Accordingly, it is stricken.

Paragraph Twelve of Witt's Additional Facts, based on Paragraph Twelve of her affidavit, states vaguely that "[m]anagement was present when these comments and/or remarks were said over the P.A. system and they did nothing to stop it." This statement lacks a foundation and is stricken.

Many of the remaining statements in Witt's Additional Facts and supporting affidavit are conclusory allegations. These statements include:

Paragraph Six, alleging that Witt "has been repeatedly and continually exposed to sexually offensive comments and remarks from her co-workers throughout her employment" with Goodyear/Kelly;

Paragraph Eight, alleging that "[t]he sexual harassment would increase in its frequency and its severity after [Witt] reported to her supervisors Orth and Baker. The sexual harassment would continue until the time [Witt] was laid off in March 1999";

Paragraph Nine, alleging that Witt "also complained of the sexual harassment to Business Area Manager Dan Sutter, and still the sexual harassment continued";

Paragraph Ten, alleging that "[t]he sexual harassment was not the act of one man but was

2

rather a group effort of numerous co-employees from different shifts and different departments";

Paragraph Thirteen, alleging that "[a]s a result of all the sexual harassment [Witt] became physically nervous and upset, and her sleeping and eating habits were affected"; and

Paragraph Fourteen, alleging that Witt's "day-to-day activities at [Goodyear/Kelly] changed dramatically because of the continued and repeated sexual harassment."

Goodyear/Kelly's request to strike these statements is granted. See Russell v. Acme-Evans Co., 51 F.3d 64, 67-68 (7th Cir. 1995). The court denies Goodyear/Kelly's motion to strike Paragraphs 1-5 and 7.

### III. *Facts*

Witt began working at Goodyear/Kelly at its Freeport, Illinois plant on January 15, 1998, where she was an hourly employee, subject to a union contract. (LR56.1(a) ¶¶ 7-8; Witt's Add'l Facts ¶ 1) Witt was initially assigned to Department 511 (Passenger Tire Building), in the non-management position of Production Service. (LR56.1(a) ¶¶ 7, 11; Witt's Add'l Facts ¶ 2) In that assignment, Witt was required to service tire building machines by delivering supplies. (LR56.1(a) ¶ 9) Witt underwent training in various subjects when she started working for Goodyear/Kelly, as well as at other times during her tenure there. (Id. ¶¶ 46-60) Manager Dan Sutter oversaw production and personnel in Department 511, and was responsible for investigating and resolving employee complaints in that department.[1] (Id. ¶¶ 14-15, 17)

In August and September 1998, Witt complained to various managers of incidents of sexual harassment by co-workers. On one occasion, she complained to Sutter that male co-workers, whom she did not identify, had been broadcasting sexual comments over the public

---

[1] As the Business Center Manager of the Passenger Tire Business Center, Sutter also held these responsibilities in Department 515, where Witt was eventually transferred. (LR56.1(a) ¶¶ 11, 14-15, 17)

3

address system, making catcalls at her, making popping noises in her presence, and making comments about her breasts. (Id. ¶¶ 67, 70) On another occasion, she complained to Sutter that co-worker Jeff Linderman had pointed a laser light at Witt's midsection and breasts. (Id. ¶ 70) Witt also complained to Area Manager Chris Loring that co-workers, whom she did not identify, were using the public address system to broadcast sexual comments to each other. (Id.) Witt complained to Area Manager Doug Orth that co-worker Doug Rutman was calling Witt "pet names." (Id.) Witt also complained to Orth that co-worker Gavin Alt had asked her if "ladies' pussies pop when they lift them heavy rolls of liner." (Id.)

As for management-level transgressions, Witt observed Orth with sexually suggestive magazines at a break table. (Id. ¶ 62) On one occasion, Orth asked Witt whether she would look like the women in the magazines with her clothes off. (Id.)[2]

In September 1998, Witt toured the plant on two separate occasions with area managers, for the purpose of identifying the co-workers whom she alleged were harassing her. (Id. ¶ 71) Witt did not identify anyone on these tours.[3] (Id.)

In response to Witt's complaints of inappropriate comments by unidentified co-workers, Sutter and Fair Practice Committee Chairman Jim Jamison interviewed various of Witt's male

---

[2] Goodyear/Kelly's Statement of Material Facts states that these two complaints regarding Orth constituted the full extent of Witt's complaints of supervisor sexual harassment; Witt responds with a denial, explaining in a non-responsive manner that she experienced additional harassment that appears to refer to co-worker harassment. (LR56.1(a) ¶ 62; LR56.1(b) ¶ 62) In the spirit of viewing the record in the light most favorable to Witt, the court presumes that Witt does not intend to deny that the two Orth incidents occurred.

[3] In her response to Goodyear/Kelly's Statement of Material Facts, Witt explains her failure to identify anyone merely by stating that "the harassers were numerous enough that almost any person could be guilty of having made a sexually suggestive comment to her." (LR56.1(b) ¶ 71)

4

and female co-workers.[4] (Id.) During these interviews, Sutter and Jamison asked Witt's female co-workers whether they had experienced or witnessed inappropriate behavior (they said they had not), and reminded both the male and female co-workers of Goodyear/Kelly's non-harassment/non-discrimination policy. (Id.)

Sutter interviewed Linderman regarding Witt's laser light complaint, and determined (incorrectly, according to Witt) that another employee was the true culprit. (Id. ¶ 72; (LR56.1(b) ¶ 72) Following Witt's complaint regarding laser lights, management instituted a company policy prohibiting laser lights in the plant, and an employee was subsequently disciplined for violating the policy. (LR56.1(a) ¶ 72) Management followed up with Witt after her laser light complaint. (Id.) Witt believes that management did not take her complaint regarding the laser lights seriously, citing her deposition testimony in which she related that laser lights were commonly brought into the plant even after the institution of the new policy. (LR56.1(b) ¶¶ 76-77; Def. Exh. 4, Witt dep. pp. 127, 173-74)

Witt admits that Orth met with Rutman after Witt complained of Rutman's behavior. (LR56.1(b) ¶ 73) Area Manager Carlton Baker interviewed Rutman and warned him not to use pet names in the future, and Witt had no further complaints regarding Rutman. (LR56.1(a) ¶ 73) The parties agree that Orth called Alt in for a talk in response to Witt's complaint, but Witt disputes that management took any further action. (Id. ¶ 74; LR56.1(b) ¶ 74) On one occasion,

---

[4] In Paragraphs 71 through 73 of its Statement of Material Facts, Goodyear/Kelly outlines the corrective measures it claims to have taken in response to Witt's complaints. Witt makes blanket denials of the assertions in Paragraphs 71-73, but offers no evidence bringing into dispute these assertions. The court is not obliged to search through the record for facts supporting her position. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). To the extent that Goodyear/Kelly's assertions in these paragraphs are supported by the record, they are deemed admitted. See Fed. R. Civ. P. 56(e); LR56.1(b)(3)(B).

which Witt does not identify, Orth and Baker laughed when Witt complained of sexual harassment. (Witt's Add'l Facts ¶ 7)[5]

Management followed up generally with Witt on various dates in September, October, and November 1998, but she did not complain of further inappropriate behavior after September 12, 1998. (LR56.1(a) ¶¶ 71, 75)

In August 1998, Witt retained counsel, who wrote a letter to Goodyear/Kelly. (Id. ¶ 79) On September 17, 1998, Witt told Area Manager Carlton Baker that her attorney had advised her not to talk to anyone at Goodyear/Kelly. (Id. ¶ 80) Witt did not see or hear any member of management telling anyone that Goodyear/Kelly had received a letter from her attorney. (Id. ¶ 81)

On September 14, 1998, Witt was transferred to Department 515, where she worked as a tire inspector. (Id. ¶ 19) During the time that Witt worked in Department 515, she had disagreements with several co-workers, two of whom were women. (Id. ¶¶ 39-40) Witt attributes these disagreements to the co-workers' disapproval of Witt's association with an unpopular female co-worker. (Id.) During this time, some male and female co-workers also refused to talk to Witt, and threw tabs from the tops of soda cans at her; Witt believes these actions to be retaliation for Witt's act of getting a lawyer. (Id. ¶ 82)

Witt claims additional retaliation in Goodyear/Kelly's failure to assign her overtime. At approximately the time Witt was transferred to Department 515, she did not receive requested overtime assignments. (Id. ¶ 92) Overtime assignment at Goodyear/Kelly is governed by a

---

[5] Goodyear/Kelly does not offer evidence to dispute this assertion. Accordingly, it is deemed admitted. See Fed. R. Civ. P. 56(e); LR56.1(b)(3)(B).

complex set of rules, which take into consideration an employee's seniority, qualifications, and prior opportunities for overtime. (Id. ¶ 85) Witt believes that the overtime she requested was given to employees with less seniority, but has no personal knowledge to support this belief. (Id. ¶¶ 84, 93-94) Witt did not complain to management or the union regarding these concerns at that time, although she believes she complained about other denials of overtime requests in August 1998. (Id. ¶¶ 86-87, 91)

At all relevant times, Goodyear/Kelly has had a non-harassment/non-discrimination policy, which is posted on a board in the plant. (Id. ¶¶ 96, 100) This policy prohibits any conduct that is annoying or bothersome, and is not limited to conduct prohibited by law. (Id. ¶ 98) The union contract also contains a clause incorporating the company's non-harassment/non-discrimination policy. (Id. ¶ 101) At all relevant times, Goodyear/Kelly has also had a written policy specifically prohibiting sexual harassment. (Id. ¶ 97)

Witt was laid off on March 8, 1999, pursuant to her request to be placed on optional layoff status under the union contract. (Id. ¶¶ 25-26) She had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 18, 1998. (Id. ¶ 5) The EEOC issued a Right-to-Sue letter dated July 26, 1999, and Witt filed this lawsuit on October 26, 1999. (Id. ¶¶ 4, 6)

## IV. *Analysis*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must draw all reasonable inferences in favor of

7

the nonmoving party. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150 (2000); EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 437 (7th Cir. 2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

Goodyear/Kelly first argues that no material issue exists for trial on Count I, which alleges that Witt received disparate treatment in training on the basis of her gender. Under the McDonnell Douglas framework,[6] Witt must show that she (1) is a member of a protected class; (2) performed her job satisfactorily; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated male employees. Cheek v. Peabody Coal Co., 97 F.3d 200, 204 (7th Cir. 1996). Goodyear/Kelly offers undisputed facts that establish that Witt did not suffer an adverse employment action due to inadequate training, and that in fact she was thoroughly trained. Goodyear/Kelly also notes that Witt fails to identify a similarly situated male employee who received more favorable training. Witt presents no evidence to counter Goodyear/Kelly's position on this issue, and does not address the issue in her response to the motion for summary judgment. Accordingly, summary judgment is granted as to Count I.

Witt similarly fails to address Goodyear/Kelly's arguments regarding Count III, which alleges retaliation. To establish a prima facie case of retaliation, Witt must show (1) that she

---

[6] Witt must proceed under the indirect method of proving discrimination set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), because she has not alleged any direct evidence of sex discrimination.

8

engaged in a statutorily protected activity; (2) that she suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse action. See Rizzo v. Sheahan, 266 F.3d 705, 714 (7th Cir. 2001). If she can establish a prima facie case, the burden then shifts to Goodyear/Kelly to present a legitimate, nondiscriminatory reason for the action. See id. at 715. If Goodyear/Kelly can provide such a reason, the burden then shifts back to Witt to show that the reason was a pretext for retaliation. See id.

Witt stated in her deposition that her retaliation claim was based on her co-workers refusing to speak to her and throwing tabs from soda can tops at her, and management's denial of her overtime requests. Goodyear/Kelly asserts that Witt's co-workers' refusals to speak to her do not constitute an adverse employment action, and that the undisputed facts show no causal connection between Witt hiring an attorney and the conduct. Goodyear/Kelly further argues that it denied her overtime requests in compliance with procedures set out in the union contract.[7] Witt fails to offer evidence to rebut Goodyear/Kelly's arguments, and does not address the issue in her response to the motion for summary judgment. Summary judgment is granted as to Count III.

Count II, alleging sexual harassment through a hostile work environment, presents a closer question. Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of

---

[7] Goodyear also argues that Witt's allegation that management unfairly denied her overtime requests exceeds the scope of her EEOC charge. "[A] Title VII plaintiff may bring only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" McKenzie v. Ill. Dep't of Transp., 92 F.3d 473, 481 (7th Cir. 1996) (internal citation omitted). Witt does not respond to this argument.

9

the victim's employment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). Courts should examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. A plaintiff must show that, as a result of the harassing conduct, her working environment was both subjectively and objectively hostile. Id. at 21-22

First, the court finds that Witt does not present evidence of misconduct by a supervisor that is sufficient to render her work environment objectively hostile. The only evidence of sexual harassment by a supervisor is that Orth had sexually suggestive magazines and on a single occasion asked Witt whether she would look like a woman pictured in the magazines without her clothes. While such conduct is obviously inappropriate, it fails to rise to the level of actionable harassment.

As for incidents involving co-workers, Witt clearly found her co-workers' conduct offensive. Given Witt's failure to challenge many of Goodyear/Kelly's material facts or support her claim with specific documentary evidence, however, it is more difficult to determine whether that conduct was objectively hostile. However, this court need not decide whether this co-worker conduct was sufficiently severe or pervasive to create an actionable hostile work environment, because there must also be a basis for employer liability. The evidence the court has before it demonstrates that Goodyear/Kelly took reasonable corrective action in response to Witt's complaints.

Where the plaintiff alleges harassment by a co-worker, an employer is liable "only if the

employer knew or should have known about [the coworker]'s acts of harassment and fails to take appropriate remedial action." Berry v. Delta Airlines, Inc., 260 F.3d 803, 811 (7th Cir. 2001) (quoting McKenzie v. Illinois Dept. of Transp., 92 F.3d 473, 480 (7th Cir. 1996)). The Seventh Circuit explained the employer's duty under Title VII as follows:

> If an employer takes reasonable steps to discover and rectify the harassment of its employees...it has discharged its legal duty. An employer's response to alleged instances of employee harassment must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made. We are not to focus solely upon whether the remedial activity ultimately succeeded, but instead should determine whether the employer's total response was reasonable under the circumstances as then existed. The reasonableness of an employer's response depends, in part, on the gravity of the harassment alleged.

Id. The question of whether an employer's response to complaints of sexual harassment is reasonable and adequate may properly be resolved on summary judgment, if the plaintiff fails to offer evidence sufficient to raise a genuine issue. Id. at 813-14.

In response to Witt's complaints in which she did not identify the culprits, management toured the plant with her twice so that she could point out the men involved, and Witt declined both times to identify anyone. Management also interviewed Witt's co-workers in an effort to determine whether others had experienced similar harassment, and reminded the workers of the company's non-harassment policy. It was reasonable for the company to respond in this general way when Witt did not specifically identify her harassers.

As to Witt's complaint of the use of a laser light by Linderman, management discussed the matter with Linderman. Witt may believe that the wrong individual was blamed as a result of her laser light complaint, but it is more significant that the company's response to the general problem was reasonable and appropriate: the company instituted a policy prohibiting laser lights

11

in the plant, and subsequently enforced that policy against at least one employee. Witt's assertion that workers continued to bring laser lights into the plant does not render Goodyear/Kelly's response unreasonable under the circumstances. See Berry, 260 F.3d at 811.

As to Witt's other complaints in which she identified specific individuals, management also spoke to those men. In response to Witt's complaint about Rutman's pet names, management warned Rutman to stop using them and received no further complaints about him from Witt. In response to Witt's complaint about Alt, management spoke to Alt about the matter. Given that Alt's remark, while certainly crude, was not severely harassing, the court cannot say that management's chosen response was not commensurate with the gravity of the offense. The record does not reflect a material factual dispute as to the reasonableness of Goodyear/Kelly's corrective measures.

V. *Conclusion*

For the reasons stated above, Goodyear/Kelly's motion for summary judgment is granted. This cause is hereby dismissed in its entirety.

ENTER:

Philip G. Reinhard
United States District Judge

DATED: November 27, 2001

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

Cynthia Witt

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 00 C 50121

Goodyear/Kelly-Springfield Tire Company, Inc.

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Goodyear/Kelly's motion for summary judgment is granted. This cause is hereby dismissed in its entirety.

All prior orders in this case are now final and appealable.

FILED-WD 01 NOV 27 PM 2:41 CLERK U.S. DISTRICT COURT

Michael W. Dobbins, Clerk of Court

Date: 11/27/2001

_Susan Wessman_
Susan M. Wessman, Deputy Clerk